The last argued case this morning is Telefonaktiebolaget Ericsson v. Lenovo et al., 2024-15-15, Mr. O'Quinn. Thank you, Judge Laurie, and may it please the Court, John O'Quinn on behalf of Lenovo. The District Court denied Lenovo's request for a temporary anti-suit injunction to protect it from enforcement of ex parte or expedited foreign injunctions sought by Ericsson in the midst of this contractual FRAND licensing dispute. The District Court did so entirely based on its threshold determination that the contractual dispute would not be dispositive of the foreign injunction requests. The District Court erred as a matter of law at that initial step for three reasons. First, it misunderstood the threshold legal requirement, which merely requires that the domestic action be, quote, capable of disposing, end quote, of the issue in the foreign action, much like a dispositive motion under Rule 12b-6, or for summary judgment, is capable of deciding a case. Second, the District Court failed to recognize that the breach claim before it, that is, whether or not Ericsson's offer is consistent with its contractual obligation to make offers and negotiate... Mr. O'Quinn, let's go back just to make sure I heard you correctly. Did you say capable of disposing or deciding? Disposing. Disposing. That's what dispositive means. Just like a 12b-6 motion, if decided in favor of the movement, is dispositive of the case. If it's decided against the movement, it doesn't resolve the case, it's capable of disposing of it. That's exactly right, Judge Reynard. I thought you said deciding and not wanting to. Right. No, no. Capable of disposing of. And that is consistent with, that language comes directly from Microsoft versus Motorola, it comes from the Ninth Circuit's decision in Applied Medical, and it's consistent... Tell us how the Court erred, in your view, with its characterization of disposing. Sure. So, Judge Reynard, the district court erred in two ways. One, it thought that the only way that it would make a decision that would be capable of disposing of, or that would dispose of, and I think that's part of it, is that it thought that it had to either way dispose of the case as opposed to if it decided it in favor of Lenovo, but that it would only dispose of it if it resulted in the determination of an actual rate. And, first of all, the breach claim itself, that is the breach of the obligation to make an offer in good faith, to negotiate in good faith, is itself a precondition to be able to seek injunctive relief. If they are in breach... Can I ask you, are you relying on both? I mean, your argument is that squarely the issue was before the district court that the adjudication of that issue will be dispositive, right? Yes. And I just want some clarity. Is it Erickson's complaint that puts the issue squarely before the district court, your counterclaim, or both? Both. With respect to the issue of whether or not they are in breach and the dispositiveness of that, whether or not they have complied with making an offer in good faith is something they put before the district court, we put it before in our counterclaims. Now, I also think that the district court was also wrong in thinking that there would not actually be a rate determined in this case, and I think was wrong for two reasons. That's your alternative. You have an alternative argument, right? That's right. Either one of these would be dispositive of the permissibility of seeking injunctions. But how would the second one work? The second one would require a remand then for the district court to reevaluate the evidence in light of your counterclaims and stuff. The alternative holding that his dispositive thing was right, but he just failed to review the facts and the evidence appropriately, right? I don't think that's quite right, Judge Prost, in the sense that if you agree that the contract claims before him, whether in the form of our counterclaims or in the form of their own claims, mean that a rate will be determined, then the termination of a rate would be dispositive. Now, they argue on appeal that that's all that we argued would be dispositive, but we argued both. The termination of a rate would be dispositive of the propriety of injunctive relief and the fact that we assert that they are in breach of their obligation to negotiate in good faith, to make a good faith offer. Let's go back to your first line, which is not the alternative argument. What's your best support for the notion that Erickson can't seek an injunctive relief unless and until it's complied with its grand obligation? Sure, I think that the best support for that is several cases. I think that is certainly consistent with the Ninth Circuit's decision in Microsoft v. Motorola, where the court observed that the whole dispute was over the propriety of injunctive relief, where there was a similar grand obligation. The exact same grand obligation was at issue in Judge Oreck's decision in the Huawei case, where the court said, quote, the availability of injunctive relief for each party's SEPs, standard essential patents, depends on the breach of contract claims, end quote. That's page 8 of Judge Oreck's opinion in the Huawei case. And I'd also point this court to the Supreme Court of the United Kingdom's opinion in Unwired Planet. That's discussed both in our opening and in our reply brief. That court, applying French law, interpreted the ETSI obligation itself. And it determined in paragraph 72 of its decision, quote, the operation of the ETSI regime requires the SEP owner to offer a FRAN license and the implementer to decline it as preconditions, as preconditions of the grant of an injunction. And it makes a similar point in paragraph 14 of its decision, where it says the SEP owner's undertaking, quote, which the implementer can enforce to grant a license on FRAN terms is a contractual derogation from a SEP owner's right under the general law to obtain an injunction to prevent infringement of its patent, end quote. This is for another point of clarification. Has Littner received any, an offer on rate? So there was an offer that was made. That is the offer of either their rack rate or of the, I think it was 1% or up to $4 a unit. And we don't believe it was a FRAN rate. We don't believe that it was a FRAN offer, and we don't believe that that is the FRAN rate. And in fact, frankly, the HTC case from the Fifth Circuit that they rely on heavily but mistakenly supports the notion that it wasn't a FRAN rate, at least as to us, because we are similarly situated to Apple, to Samsung, to Huawei, the parties that the HTC court observed got much better rates than those. So we think it's a discriminatory rate. But we don't think that the offer itself complied with their obligation to make an offer in the first instance. And that alone, a determination on that in our favor, that alone would be dispositive. And that alone is a reason that the district court— But do you concede that if the district court finds that Erickson has not breached its FRAN negotiating obligations, then there's no impediment to it seeking foreign injunctions? So, Judge Gross, I think that's necessary but not sufficient. The other piece of the puzzle would be that there would need to be a determination that was also put in play by their contractual action that we, meaning Lenovo, are an unwilling licensee. In other words, every court that has looked at the Etsy obligation, whether it was the United Kingdom in the Unwired Planet case, if you look at the courts in Europe that are cited in the law review article at Appendix 3094 to 3098, every single one of them look for two things before an injunction can issue in the context of this Etsy commitment. One is that they've made a FRAN-compliant offer, and two is that the implementer or the defendant, and that would be us, is not negotiating in good faith— But I thought you seemed quick to say that if Erickson did breach its negotiating obligations, then it can't seek foreign injunctions. So, deciding that Erickson didn't breach its negotiating obligations, doesn't that mean that Erickson can seek foreign injunctions? Well, I think— How else could it be dispositive? I mean, that's your dispositive argument. Well, just to be clear, it's enough that if you agree with us that it would be dispositive. In other words, for example, if you look at the way that Microsoft v. Motorola described the dispositiveness inquiry at page 885 of that opinion, it said, quote, Microsoft's contract-based claims would, if decided in favor of Microsoft, determine the propriety of enforcement by Motorola of the injunctive relief obtained in Germany. And my modest position is that if you agree with us that they are in breach, that is dispositive of their injunctive claim. Now, the mirror image of that is not quite correct in the sense that, in addition to showing that they are not in breach, they would need to demonstrate that we are an unwilling licensee as a precondition. Now, that is in the district court case, and so that is an issue that could be decided by the district court. If the district court decided both of those issues, then yes. If they decided both of those issues adversely to us, then yes, they would be able to seek injunctive relief under the FC agreement. How is Erickson in breach? Is it because they're not FC compliant? That's right, Judge Reynaud. Our position is that the offer that they have made us is not consistent with their FRAND obligation and that their conduct, you know, the offer that they made was on October 11th of last year at the same time that they filed not only the action in district court, but they also filed the action in the ITC seeking an exclusion order, and so that that is further example of how that they are. So you're not arguing then that this is not a FRAND rate, rather than, your argument, if I understand it correctly, this is not a FRAND offer. Our argument is both, Judge Reynaud. We are arguing it is not a FRAND offer and that if the district court agrees with us, that is dispositive of their request for injunctive relief. We are also arguing it is not a FRAND rate. It is our position that they ultimately would be obligated to enter into a FRAND rate. That would also be dispositive. These two issues are issues that would be decided by the district court. Those are issues that we believe should be decided by the district court in the context of the litigation. The question of whether or not that they have made a FRAND offer is one that they have clearly teed up. That is whether their offer is consistent with their obligation. If we were to vacate and remand, exactly what point would that be? On the failure to adequately apply the first test of the injunction criteria? That's right, Judge Reynaud. This court can vacate and remand. You can do so solely on the grounds that the district court misunderstood in the way that it approached what constitutes being dispositive. That would require that we inform the court as to the proper definition of the parameters of dispositiveness. Of dispositiveness. I think that this court's prior decision in the Santa Fe Aventis case is on point on this as well. The court there said the, quote, functional inquiry, and that's what we're talking about. It's a functional inquiry that requires the district court can determine whether the issues are the same in the sense that the issues, quote, can be resolved in the U.S. action. Not must, but not will, but can. And they clearly can be resolved here. Now, as we've argued in our brief, and I realize I'm well into my rebuttal time, but I'm happy to take questions on this as well. In addition to vacating on the grounds that the district court erred at the threshold inquiry, given the exigent circumstances of these existing foreign injunctions, the fact that the issues are fully briefed on appeal and is that other circuits have observed that the ultimate decision whether to grant an anti-suit injunction largely turns on legal principles as much as anything, this court can and should order entry of the requested injunction on remand. And so what's the, I mean, you've indicated there's a sense of urgency here, a compelling urgency here. Was this case expedited in any way? It was. It was. We filed a motion to expedite this appeal. Ironically, it was opposed. This was after they had obtained injunctions in Brazil and in Colombia that are aimed at very large markets and are aimed at harming us. Meanwhile, they have no irreparable harm of their own. So this case was expedited. We did ask for it to be expedited and placed on the calendar. And I would respectfully submit that all of the issues in this case have been anticipated by the Ninth Circuit in its reasoning in the Microsoft v. Motorola case. It rejects the very arguments that Erickson is now making, and I would ask that this court do likewise. I'm happy to answer any additional questions. We will save you rebuttal time, Mr. O'Quinn. Thank you, Judge Laurie. Mr. Lampkin. Thank you. May it please the Court? The almost invariable rule is that parallel proceedings before different sovereigns proceed in parallel without interference one against the other, except in the most extreme cases. And the district court here was well within its discretion in not contributing that rule through an anti-suit injunction. It would have rendered unenforceable in Brazil a Brazilian decree enforcing Brazilian patents for sales to customers in Brazil. Let me just ask you. Go ahead. Do you agree that your ETSI commitment requires you as a potential licensor of SEPs to negotiate in good faith with potential licensees? Yes, the ETSI commitment does require that. But I think the issue here is the district court found that the threshold issue, as the district court found, is whether or not the North Carolina case would be dispositive. And it found that Lenovo's own position prevented it from being dispositive, because Lenovo took the position that if our offer is found franked, if our offer is found franked, it reserves the right to continue infringing. It reserves the right not to take the license. It reserves the right to continue exactly as before. But you're out in the marketplace. I can see how there's arguments that an offer is not a franked offer or it's not made at a franked rate. I mean, that's not surprising. I'm sorry. It's not surprising that they're arguing that our argument is that it's not franked? Yes, I mean, these arguments occur all the time. Who decides that? In order to move something like this along, if that issue has to be decided, whether there's been a franked offer or a franked rate, then who guides that adjudication process? Each court before whom that issue is raised is able to write it, to decide it. So there's nothing that says that a North Carolina court is better positioned to decide whether something violated the French law ETSI contract than a Brazilian court, and precludes relief in Brazil, than a Brazilian court that would apply the same ETSI contract. We're not talking about deciding this case. We're deciding about solely the issue of seeking an injunction. And that's a bit different. Well, actually, when it comes to Brazil and it comes to civil law countries, the primary relief is injunctive relief. And what the court is being asked to do, the district court was being asked to do here, was to render that relief unenforceable, to tell the parties, you know this court decree is here, but you cannot enforce it. That is a grave intrusion on the Brazilian proceedings by saying, yes, the court can issue the decree. That's how those courts operate. Pardon? That's how those courts operate. They're injunction-oriented. Exactly why it's such a great... It's called a juicio de amparo. Pardon? A juicio de amparo. Juicio de amparo. But that is how they operate, and it's not inconsistent with the ETSI obligation for a Brazilian court to follow its own rules. And there's simply nothing... Really, the whole point of FRAN, these FRAN commitments, is it required some effort from the patent holder to license before it seeks to enforce its SAP. I think that's right, and the question then is, does the U.S. court shove the Brazilian court out of the way and say, I will decide... What else do these FRAN commitments impose on you? Anything? Is there anything left? No, certainly these commitments exist. But it's not proper to issue an anti-suit injunction to intrude on a foreign proceeding on the chance that there may be a breach. That just goes too far. Has any court held that? Imagine the circumstances. What if, at the end of four years of litigation, the district court or the jury finds here that our offer was FRAN? What do we say to the Brazilian court? Oops, we're sorry. Go ahead and enforce your decree now. We're sorry we interrupted it and rendered it unenforceable for four years. That isn't the standard. That gives too little weight to the international ramifications of enjoining enforcement of a foreign decree. Instead, what you need to have, and I'm going to pause here and say something about waiver, but what you need to have is a decision that's necessarily dispositive of the foreign case, that if we lose or we win, it's dispositive. And waiver, there's nothing in the opening brief. I'm sorry. Do the foreign cases have an undermined case of infringement? Yes, that's exactly why. Your argument is that dispositive means that all of those cases, including the underlined infringement matters, have to be resolved by the injunction. I think the answer is not necessarily what the injunction would do. It's will the U.S. proceeding be dispositive of the foreign cases? But it's not even dispositive of the right to injunctive relief in Brazil. First, because if we win, then it's not dispositive. Does the action here have to be dispositive of all the foreign proceedings? The ones in Colombia? Yeah, I think in order to get an anti-suit relief against a Colombian action, you would have to be dispositive of that action. What's the authority on that? So I think the district court cited on Appendix 15, the 11th Circuit's decision in Cannon v. Lantech, and it explained, and Cannon v. Lantech is important, because that court explained that in view of the comedy and international conflicts concerns, it would read dispositive to mean what it says, which means ending the dispute, ending the issue between the parties. And that's what the district court followed here. In the opening brief filed by Lenovo, never once says district court applied the wrong legal standard. That simply doesn't come up. The issue is as waived as waived could be. But the right answer is, if you're going to enjoin a foreign court decree, you have to be awfully certain that the U.S. decision is going to, going to decide that issue as a threshold matter. There's lots of other comedy issues you have to get to the end, which is why you would have to remand even if you disagree. But you have to be awfully certain it will necessarily resolve the issue. That was the standard the district court applied, necessarily dispositive. No objection in the opening brief to that. And the reason for that is, if you imagine, look, if we win, what happens? We tell the Brazilians, okay, never mind for four years, we're sorry we interfered with your decree, let's go forward. In addition, I think it's absolutely critical that the reason why, the reason why the decree is not, excuse me, the U.S. issue is not entirely dispositive, is because Lenovo's holding out. Lenovo says, hey, we won't follow you, if Erikson's against Rand, we won't accept it. Would you agree with me that Lenovo is seeking an anti-suit injunction to enjoin Erikson from seeking or enforcing foreign injunctions? That's exactly what they're seeking, yes. So then, if you agree with that, then would you also agree that what the injunction is focused at in this instance is the conduct of the parties? That's true, but I think... So could not, given your presence in the United States and membership in the standard-setting organizations, then if you received an injunction from the U.S. District Court, that would it stop you? Yeah, if we... Why would that not dispose of the issue, the case? And that's... Okay, I think the question isn't whether the anti-suit injunction will dispose of the foreign suit. The question is, as a threshold, before issuing an anti-suit injunction, the court has to know that the issues between the two cases are the same, and they are the same if the U.S. decision, when it ultimately is decided, is dispositive of the foreign action. And I think the court decided that the parties were the same, at least. The parties were the same, but the court decided that the issues were not functionally the same, because the U.S. decision would not necessarily dispose of the foreign suit, and it wouldn't dispose of the foreign suit because of what Lenovo said. What Lenovo said was, if Erickson's offer is franked, even if it's... and we asked for an adjudication, is this offer franked? Not is it consistent with the obligation to offer a negotiation of good states, but is it franked? Three times on page 16, the district court says that. If it's franked, then we get to proceed in Brazil. Well, why would a district court, on the chance that it's not permissible to go in Brazil, enjoin proceedings in Brazil? Why would they enjoin the injunction in Brazil? In ordinary injunctive cases, in ordinary injunctive cases, you have to show probability of success. I'm likely to succeed, and therefore, I should enjoin these proceedings. Because of the enormous comedy effects, the grave impact on international relations, there's a higher standard when it comes to... when it comes to anti-suit injunctions, and that higher standard has to be necessarily dispositive. It has to be absolutely... forecloses the result one way or the other, regardless of who wins, and it really goes too far for a U.S. court to say, you know what, Brazilian court, you heard arguments that the offer wasn't franked and that you shouldn't enjoin, and you reject them, but we, the U.S. court, are now going to go have a trial. And if the trial goes one way, we're going to keep an injunction against you. And if the trial goes the other way, after four years, we're going to vacate our injunction and please go ahead. That's not consistent with international comedy, and that's why there's a very high threshold... So is it your view that the Brazil and Colombia courts actually considered and adjudicated the issue of whether you must comply with brand obligations? Yes, the argument, at least in Brazil, where they appeared and made their arguments, the argument was set up time and time again that we had breached our obligation and therefore there should not be an injunction. And the Brazilian court simply either disagreed that there was proof that we had a breach or disagreed that under the circumstances of the case that would preclude us from getting an injunction. And I think that's another key point... But the merits of all of this is still before them. Yeah, there is an appeal still pending before the Brazilian Court of Appeals. On the injunction. On the injunction, which is why... But the merits of the case have not been adjudicated, right? Well, yes, only the preliminary injunction has been. That's correct. It's just like it occurs in the United States. But the key point is that the US court doesn't sit as a super adjudicator, a super court of appeals, staying the Brazilian injunction while it decides whether there's a breach. The Brazilian court is just as capable of deciding it. And that's just simply the way it works. Parallel proceedings go in parallel. And if there's going to be an injunction that prohibits enforcement of a Brazilian decree... When you say parallel proceedings, it's the US district court on one rail. What's on the other one? So the US district court where we filed suit, there's a proceedings in the UK where Lenovo filed suit, and there's a proceedings in Brazil and Colombia where we filed suit. And that's simply a reflection of that ordinary rule that if you want to enforce a Brazilian patent, the only place you can enforce it is Brazil. And I keep going back to this point, but I think it's absolutely critical. The party that prevented the US case from being dispositive is Lenovo, and they prevented it by saying, if it comes out a particular way, if Erickson wins and its offer is adjudicated in France, we reserve the right not to accept that offer. We may continue to infringe. We may continue to hold out. We're looking at 15 years of holdout here. We may continue to hold out, at which point nothing has been resolved. And that means that we would put Brazilian decrees on hold for five years. That doesn't make for nothing. That doesn't make sense. In ordinary injunctions, we have a standard of, well, you need to show a probability of success. You don't get that unless you're likely to succeed. For anti-suit injunctions, it's more exacting because of the international comedy requirements. And that, for them, the standard is it's necessarily dispositive. The standard from Cannon v. Lantec, the standard that district court applied below, and the standard that was never challenged in their opening brief. Likewise, it's not even necessarily dispositive if the district court were to find a breach. And that's because of this. There's nothing in the ETSI contract that says if you breach your fair and obligation, you can't get injunctive relief no matter what, period. That's the end of the day. You are disabled. You just can't find anything in the ETSI contract that says that. A Brazilian court would be well within its rights to say, you know what? Given the primacy of injunctive relief under our system, and given the intense holdout behavior we have seen from the Lenovo, we're looking at 15 years of holdout here, two years trying to unsuccessfully negotiate an NDA. We even got to the point where we said, just sign the same one we had in 2010, and they said no. Look at that intense holdout period. We think injunctive relief is justified even though there is a breach of FRAN. And there's just simply nothing in ETSI that precludes that. And so the notion that this is necessarily dispositive fails at both ends. It fails at the front end because Lenovo has made the determination that it won't accept our FRAN rate, or at least reserves the right not to accept it, even if it's adjudicated in FRAN. Well, how can they insist on an injunctive release against their foreign relief when they won't fully accept the results of the U.S. proceeding? Likewise, on the Brazilian side of things, how can it be that it's necessarily dispositive if the Brazilian court has authority to say, look, we give injunctive relief, that's the norm, and given the intense holdout behavior, yes, maybe there's a technical breach here, but we would like to give an injunction by then. At the threshold, they simply fail to show that it's necessarily dispositive, which is the standard the district court used improperly because of the enormous consequences of erroneously enjoining a foreign decree for four years and then saying at the end of four years, oops, you're right, Erickson won, we're sorry, we shouldn't have enjoined your decree. If I could turn just very briefly in the minutes leading to Microsoft, which I think is, or actually perhaps talk about for a moment, counsel mentioned the unwired planet decision, Sandy cited it in the opening brief, but unwired planet wasn't cited for the notion that a breach of FRAND automatically disables you from getting injunctive relief. It's cited just for the notion that courts can do rate settings. And I think the key here is that there can be no rate setting if we didn't breach FRAND. If we were consistent with FRAND, there is no remedy of a rate setting because a rate setting is simply a remedy. No wrong, no remedy. US courts don't just set rates because somebody asked them to. If we breached FRAND, only then would there be a remedy. So the entire position here, the entire effort to get this overturned is on the possibility, unproved, never proved the district court, that somehow we managed to breach FRAND, an issue they could just as easily raise in the Brazilian court. If I can have just 30 seconds on Microsoft, it looks like all I got. I think Microsoft is completely different in three respects, even apart from the fact that it's not binding on the Fourth Circuit, the district court here, or this court. First, Microsoft upheld discretion to issue anti-suit relief. It didn't say it would be an abuse of discretion to deny it on those facts, much less the different facts here, where Lenovo itself is holding out and saying, gee, even if it's FRAND, we won't do it. And second, Microsoft rested on the notion that's long been overruled by this court, which is the idea that the FRAND obligation itself precludes injunctive relief. Microsoft has to reconfigure, excuse me, Lenovo has to reconfigure Microsoft to say, well, it's not just, we're not saying it's impermissible per se, but if we prove a breach, then it's impermissible, but without proving that breach, it's improper to interfere with the FRAND proceedings. Thank you, Judge Loehr. I see I'm 30 seconds over. If the court has no further questions, we ask that the judgment be affirmed. Thank you, counsel. Mr. O'Quinn has some rebuttal time, essentially two minutes. And I hate to, I have a question they want you including your answer in. Yes, go ahead. Is this to dispute whether Brazil or Columbia courts actually considered and adjudicated the issue? But suppose they did. If that's so, then why should we, why should the district court be able to decide that issue differently and impose its views on those foreign tribunals? And if you can address the Cannon case that Mr. Blanken also raised. Sure, Judge Frost. So a couple of points. So with respect to Brazil, I'd point you to Appendix 2422. It's the three-page opinion in which they granted the preliminary injunction six days after it was sought. There's no analysis of the contract. Well, let's assume they had that, hypothetically. Yeah, I think...  I think it would not matter to the threshold issue of dispositiveness. It might matter to a weighing of comedy issues at that point. That's counterfactual. It doesn't exist here. And I think that's also the difference between this and the Cannon case that he talked about. And here, the district court stumbled out of the gate respectfully with respect to the threshold inquiry. But in all events, certainly the Brazilian court didn't decide this on the merits. All it decided was whether or not, as a matter of domestic law, it was going to grant the injunction. And the fact that there was an asserted FRAN obligation wasn't sufficient for it to not to, at least in the three-page order that we have, which is a different question than the question that's before the district court, which is, in the words of Microsoft v. Motorola, is, quote, the contractual umbrella over the patent claims. And that controls here, and it dictates that this action is dispositive. That was the reasoning in Microsoft at page 883, and it did not apply a per se prohibition, because if the contractual umbrella doesn't matter, then the FRAN obligation is meaningless, which, of course, has very significant public policy issues here in the United States and around the world. And to be clear, to say, well, the Brazilian courts can do what they can do ignores the fact that they freely encumbered their patents with this contractual umbrella. It also ignores that they freely came to the United States courts first with the contractual dispute. And that contractual dispute, because it can and will be dispositive, and they are reading more into the dispositive inquiry by saying it has to necessarily be dispositive. That is inconsistent with the passages that I recited earlier from Microsoft versus Motorola and other cases. And the last point that I'll make, Judge Lurie, unless the panel has other questions, is we see at the podium here today there's a conflating between the so-called FRAN offer and a FRAN rate. They ultimately have an obligation to do both. That is, they have an obligation to make an offer in good faith and negotiate in good faith, and they have an obligation to enter into an actual FRAN rate with the parties, with the counterparty, and they have done neither. And cases recognize there is a distinction between referring to an offer and whether or not an offer complies with the duty to negotiate in good faith versus actually determining the rate, and cases also recognize, like Judge Robart in Microsoft and Judge Andrews in the Interdigital versus ZTE case, that you typically have to determine the rate in order to decide whether somebody has negotiated in good faith. I appreciate the court's indulgence. Thank you, counsel. Both counsel, the case is admitted. Thank you, Judge Lord. That concludes today's argument.